## FORBES *v.* GORMAN.

1. LANDLORD AND TENANT — LEASE OF PORTION OF BUILDING — RIGHT TO USE OF ROOF.

 The lease by the owner of a building consisting of several stories, to a merchant, of the first story and basement for use in his business, with license to use the roof for a sign or signs, confers no right to sublet the privilege of using the roof to another person to advertise a separate business, but merely a personal right to advertise the business carried on under the lease.

2. SAME—RIGHT TO USE OF OUTSIDE OF BUILDING.

 The lessee of one story of a building obtains the right to use the premises, including the outer and inner walls, for all purposes not inconsistent with the lease, and may put any sign or signs on the walls which work no injury to the freehold.

**3. SAME—RIGHTS BY ESTOPPEL.**

> No right is acquired by estoppel in favor of a tenant who permits a third person for a specified rent to erect a sign on the roof of a building of which he rents a portion, against the owner whose agent discovers the sign in process of erection, and who was not informed of the purpose or compensation for the arrangement.

Appeal from Wayne; Murphy, J. Submitted October 15, 1909. (Docket No. 97.) Decided December 30, 1909.

Bill by Jeanette Fisher Forbes against John J. Gorman and Walker & Company for an accounting. From a decree for complainant, defendant Gorman appeals. Affirmed.

*Codd & Hall* (*Earl F. Drake*, of counsel), for complainant.

*Navin, Sheahan & Bourke*, for appellant.

The bill in this case alleges that complainant was the owner of a building in Detroit, known as the "Fisher Building," situated at the corner of Lafayette and Michigan avenues; that on June 30, 1902, she leased to one Leon Higer the first floor and basement of said building for five years, "to be occupied for the sale of clothing, gents' furnishing goods, hats, caps, boots, and shoes, and such articles as are usually handled and sold in said lines of business;" that said lease contained the following provisions:

"Said second party covenants that he will not assign or transfer this lease, or sublet said premises, or any part thereof, for any business more hazardous or reasonably objectionable, than that hereinbefore mentioned, without the written consent of the first party. * * *

"It is agreed between the parties hereto that said second party shall be privileged to place and maintain an electric or other sign or signs on the outside of said building, overhead the premises occupied by them, and on the top of said building, during the existence of this lease, and any renewal thereof, provided, however, that said

sign or signs shall be placed so as not to interfere with other tenants in said building, in the use and occupation thereof leased to them."

That said Higer assigned said lease to the defendant Gorman on March 6, 1905; that said Gorman, at some date unknown to the complainant, made a contract with the defendant Walker & Co., a corporation, purporting to convey to said Walker & Co. the right to place upon the top of said building a conspicuous electric sign of "Wilson Whiskey;" that said Gorman assumed to rent space upon the roof of the building for that purpose, and received pay therefor; that said defendant Gorman refused to inform complainant of the terms of said contract or the amount of compensation he received from Walker & Co.; that said lease to said Higer contemplated and permitted him, or his assigns, to place upon the roof of said building a sign in connection with the business of said Higer, or his assigns, but for no other purpose. Complainant filed this bill to obtain an accounting of the amounts paid or due under the alleged and suppressed contract between the defendants, claiming that the said amounts belonged to her. Defendant Gorman answered, admitting all the material allegations of the bill except as to the construction placed upon the lease by the complainant, and promised to produce upon the hearing his contract with the defendant Walker & Co. He further alleges that the sign was erected with the consent of complainant's agent. The case was heard upon pleadings and proofs taken in open court, and a decree entered for the complainant.

GRANT, J. (*after stating the facts*). 1. It is agreed by counsel for both parties that the "privilege" mentioned in the lease to Higer was a mere license. Counsel for the defendants, in opening their case to the court below, stated their position to be that the privilege granted to erect a sign or signs "was not a part of the lease or subletting or anything else, but that its erection was sanctioned by Mrs.

Forbes through her agent, and that she is therefore estopped to complain." Walker & Co. is a corporation organized for carrying on an advertising agency. The sign has no connection with the defendant Gorman's business. The contract between the defendants recited that the defendant Gorman was the lessee of the main floor and roof of the building. It was executed with all the formalities of a lease and was to continue two years, with the privilege of a third year, at a rental of $450 per annum.

The first and decisive question presented is, What is the nature of the privilege or license granted by the lease? If defendant's contention be sustained, the lessee acquired the entire use and control of the roof of this building, provided only that he should not interfere with the occupancy of the tenants of the floors above the basement and first story leased by him, and he could sell and convey the right of advertisement to other parties, and thus cover the entire roof with signs. We think the only construction that can be placed upon this provision of the lease is that the right to maintain such a sign or signs was a personal privilege granted to the lessee, or his assignee, to advertise the business to be carried on by the tenant. It was a privilege incidental to his business. The very language of the lease refutes the idea that the landlord was leasing the roof of this building to the lessee for the purpose of profit aside from that which might result from advertising his own business. The lessee was given no dominion over the roof; was under no obligation to keep it in repair. He simply secured the privilege of putting a sign on it. The lease of a building, or of one floor or story thereof, conveys to the lessee the absolute dominion over the premises leased, including the outer as well as the inner walls. Such lessee obtains the right, in the absence of restrictions, to use such premises, including the walls, for all purposes not inconsistent with the lease. He acquires the right to the use of the outer walls, and can put any sign or signs thereon which work no injury to the freehold. The landlord in such a lease retains no

right to permit signs or advertisements of other parties to be placed upon the outside walls of the leased building. Otherwise, he might permit the sign of a competitor in business to be placed upon the wall. Such use would be repugnant to the plain terms of the lease. *Lowell* v. *Strahan*, 145 Mass. 1 (12 N. E. 401, 1 Am. St. Rep. 422). It was there held that the outer wall was a part of the premises leased. A similar case is *Riddle* v. *Littlefield*, 53 N. H. 503 (16 Am. Rep. 388). It is there said:

"The outside wall of a building leased or conveyed passes by the lease or deed as much as the inside of the same wall. * * * The outer side of the wall is but one side of the same wall that has an inner side; and the removal of the wall removes both sides. If, then, a lessee or grantee may have the wall which he pays for, it would seem that he should be entitled to the use of it, not only for purposes indispensable to the occupation of the building, but also for any purpose of service or profit not inconsistent with the lawful and reasonable enjoyment of the property."

There is another class of cases wherein the owner of buildings or lands, by express contract, rents to the contractee the use of fences, or the outside walls of buildings, for the express purpose of advertising. Such cases are *R. J. Gunning Co.* v. *Cusack*, 50 Ill. App. 290; *Willoughby* v. *Lawrence*, 116 Ill. 11 (4 N. E. 356, 56 Am. Rep. 758). These and similar cases do not touch the question in the case now before us, a question which counsel concede has not before been presented to this court. Neither is any case cited from other courts "on all fours" with this. See, also, 14 Cyc. p. 1206; *Morrill* v. *Mackman*, 24 Mich. 279 (9 Am. Rep. 124). It seems to us unreasonable to construe this lease as conveying to the lessee of the lower story the sole use of the roof of the building for his own profit. The use of the roof for any purpose was not essential to the full enjoyment of his lease. He was only permitted, if he chose to exercise it, the privilege of putting up a sign, or signs, in connection with his own business.

No question arises upon the right to put signs, for any purpose, on the outside or inside walls of that part of the building leased to the defendant. No reference is made to such use of the walls in the lease. That right, as above stated, follows from the grant, conveyed by the lease. It in no manner affects the separate and distinct privilege to place a sign or signs upon the roof, which is not leased to the lessee of the basement and first floor.

2. There is no room in this case for the application of the doctrine of estoppel, even if such right could be obtained by parol. Neither the complainant nor her agent had any knowledge of the intention to erect this sign until it was in process of erection. Her agent, in passing the building, discovered what was being done. He at once applied to complainant's attorney for the construction of the lease, and was informed that defendant Gorman had no right to erect or permit the erection of the sign. Defendant Gorman was so informed. He did not inform complainant of his intention, or of his contract with the defendant Walker & Co., but acted in opposition to her rights under the lease. And when her agent accidentally discovered the sign in process of erection, Gorman did not inform him that he claimed the right, under his lease, to permit the erection of this sign, or that he was to receive any compensation from Walker & Co. for it. He is not in position, therefore, to raise the question of estoppel.

The decree is affirmed, with costs.

BLAIR, C. J., and OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.