GEORGE T. STEPHENSON, TRUSTEE, APPELLEE, V. CHARLES M. MURDOCK ET AL., APPELLANTS.

FILED MARCH 24, 1911. No. 16,380.

1. **Appeal: AFFIRMANCE.** Where, upon the trial *de novo* of a suit in equity brought to this court on appeal, an independent investiga-

tion of the pleadings and the evidence contained in the bill of exceptions results in a judgment which accords substantially with the conclusions reached by the trial court, the findings and judgment of that court should be affirmed.

2. Limitation of Actions: ADVERSE POSSESSION: NOTICE. The statute of limitations does not commence to run in favor of one claiming an interest in real estate until he has taken possession thereof, or has exercised such dominion over the premises as amounts to notice to the real owner of his adverse claim.

APPEAL from the district court for Gage county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

E. O. *Kretsinger* and C. M. *Murdock,* for appellants.

E. N. *Kauffman* and A. D. *McCandless, contra.*

BARNES, J.

Action in the district court for Gage county for accounting as to certain property held in trust, and for a decree to sell the same for the payment of the sum found due the plaintiff in the matter of the trust estate. The plaintiff had the judgment, and the defendants have appealed.

It appears that on the 3d day of December, 1892, the property now in question, together with certain other real and personal estate, was owned by one Samuel Wymore, Sr., who at that time conveyed the same in trust to Charles M. Murdock, Arthur A. Murdock, and Joseph Pasko, and took their notes therefor in the sum of $8,-819.50; that soon thereafter Wymore left his home in Gage county and established his residence in the state of Nevada; that no payments were made on the notes above mentioned, and the same were renewed from time to time; that in the month of December, 1892, Wymore returned to Gage county for the purpose of disposing of his property and settling up his accounts with the defendants above named; that, being unable to sell or otherwise dispose of the property in question, he conveyed the same, or so much thereof as the defendants had not already dis-

posed of, to the defendants Charles M. Murdock and
Arthur A. Murdock by warranty deed, with a written
agreement from them that they were to sell the real estate
for him, pay the taxes which had become delinquent
thereon, and remit the remainder to him, which was to
be applied to the payment of the notes above mentioned;
that in 1896 the notes were again renewed; that in March,
1899, Wymore returned to his former home in Gage
county, and, no account having been rendered to him as
to the disposition of the proceeds of his property thereto-
fore conveyed to the defendants, the notes were again
renewed, and, although some of the property had been
disposed of and a considerable portion of the real estate
had been sold for the nonpayment of taxes, Wymore en-
tered into a written contract with the Murdocks (Pasko
having died after conveying all of his interest in the prop-
erty to them) by which it was provided as follows: "It is
mutually agreed by and between all parties to this agree-
ment that the list of lands and town lots, improved and
unimproved, and nine head of horses and mares and con-
tract of E. H. Chaffin and Sherman L. Wymore for prop-
erty sold and not fully paid, a list of all which is hereto
attached and made a part of this agreement; that said
* * * property and the title to said real estate shall
be held in trust by said Charles M. Murdock and Arthur
A. Murdock, but handled in common by the parties to this
agreement, for sale, exchange, improvement, cultivation
and rent, and the proceeds from said sale, rents and ex-
change to be applied to the payment of the delinquent
taxes due on said property and the payment to˙ said
Samuel Wymore, Sr., in the aggregate amount due on said
three notes above mentioned, $8,729.56 without interest,
and after said amount shall have been paid and settled in
full then the residue and balance of all property, real or
personal, or proceeds from said business, if any, to be held
in common or sold, and the proceeds divided equally
between the first and second parties to this agreement
as they may elect. It is further agreed that neither of the

parties to this agreement shall make any charge for their time and labor in transacting any business for the firm or in settling or collecting notes and accounts due Samuel Wymore, Sr., individually, separate and apart from the firm or company business."

It appears: That the first thing done by the Murdocks after the deeds above mentioned were executed was to mortgage Wymore's home place for $500 to one E. H. Amber. The mortgage was renewed from time to time and finally paid off by Samuel Wymore himself in 1903. In the meantime, although the Murdocks were in possession, control and management of the property, no taxes had been paid thereon. That when Wymore gave Charles M. Murdock the money with which to pay off the mortgage above mentioned, with the instruction from Wymore to take an assignment of the mortgage in his favor, Murdock disobeyed the instruction and had the mortgage released. It further appears that, although the legal title was in the Murdocks, they at all times admitted that they held the property in trust; that Wymore depended on the Murdocks to carry out the terms of the written contract, sell the land, pay the taxes, and turn over to him the amount that had been agreed upon, to wit, $8,729.56 without interest. It seems to be conceded that they did neither of these things. When Wymore ascertained the facts in relation to their mismanagement of his estate, he commenced this action. Thereafter, being old and in failing health, he conveyed the property to one George T. Stephenson as his trustee for the purpose of prosecuting this action for and in his behalf; that after the testimony was taken, but before the judgment complained of was rendered, Wymore died, and the action proceeded in the name of the trustee. When the case was finally argued and submitted, the trial court found the facts in substance as above stated, and made an accounting between the parties. It was found that there was due to the plaintiff of the proceeds of the Wymore estate the sum of $6,086.71; that Wymore had paid certain taxes and incurred certain expenses

in the management of the estate, amounting to $277.70, which was included in the amount found due as above stated, which was declared to be a lien on the remaining portion of the real estate. A decree was entered providing for the sale of the remainder of the property which had not theretofore been disposed of by the Murdocks, and it was ordered that the proceeds be applied, first, to the payment of the taxes, and that the remainder be paid over to the plaintiff as the trustee of Wymore's estate.

Defendants' first contention is that the district court erred in finding that there was $6,086.71 due and unpaid to the plaintiff as trustee for Samuel Wymore under the contract of March 29, 1899. This contention has compelled us to review the entire evidence contained in the bill of exceptions. This we have done, and we are satisfied of the correctness of the accounting made by the district court. In fact, we adopt his findings as to the amount due as our own. It may be said in passing that, if called upon to determine that amount in the first instance, we might have made it larger than the sum found due by the district court; but, on the whole, we are satisfied with the correctness of that portion of the decree.

Defendants' second contention is that the court erred in holding that Glen E. Murdock was not the *bona fide* owner of that portion of the estate which he had obtained from his father, Charles M. Murdock, by and through the intervention of the Lincoln Land Company. We have examined the evidence upon this question, and are satisfied that Glen E. Murdock never paid any consideration for this property; that he was not a purchaser of it in good faith, and therefore the trial court was right in finding that the property in equity still belonged to Wymore.

It is also contended that the statute of limitations had run in favor of Glen E. Murdock at the time this action was commenced. It appears, however, that he never placed the conveyance by which he claimed title upon the records of Gage county; that in 1899, when the contract in question was entered into, there was nothing of

record which showed that Glen E. Murdock had any interest whatsoever to any portion of the property mentioned in the schedule attached to that contract, and it is conceded that at that time he had reconveyed the tract of land in question to his father; that in making the contract it was agreed, understood and conceded by all of the defendants that the land now claimed by Glen E. Murdock was still a part of Wymore's estate. He made no claim to the property at that time, and having given no notice of his present claim, either actual or constructive, he is not entitled to invoke the protection of the statute of limitations.

A vigorous attack is made upon the good faith of Stephenson, the trustee and present plaintiff in this action; but, the Murdocks having been decreed to have no further interest in the property in question, such an attack is entirely beside the mark. At this stage of the case, no one can complain of the actions of the trustee, except the heirs of the Wymore estate.

A careful examination of the whole record satisfies us that the judgment of the district court was right, and it is

AFFIRMED.

ROSE, J., not sitting.