# CHARLESTON.

SALINGER *v.* NORTH AMERICAN WOOLEN MILLS *Co. et als.*

Submitted February 21, 1911. Decided December 19, 1911.

1. EVIDENCE—*Parol Evidence Affecting Writings—Lease.*

As a general rule a written lease of land becomes the repository of the contract, all preceding negotiations becoming consummated in it, and in the absence of fraud or mistake, it is the controlling evidence of the terms and conditions upon which the property was demised. (p. 154).

2. LICENSES—*Real Property—Revocability of License.*

The knowledge of a landlord, or of one of his tenants, and his or their acquiescence in the use by another tenant, without consideration, of the outside walls of a portion of the building not enclosing the part occupied by or leased to him, but leased to and occupied by another tenant, amounts simply to a revocable license, revocable at pleasure by the licensor, whether such licensor be the landlord or a tenant. (p. 155).

3. LANDLORD AND TENANT—*Use of Premises—Signs on Walls.*

The lessee of a store room, unless restrained by the terms of his lease, has the exclusive right to the use of the outside walls of that portion of the building covered by his lease, for advertising signs, to the exclusion of a lessee of another part of the same building, but he has no right to occupy with such signs or for any purpose the outside walls not enclosing his part of the leased premises. (p. 155).

4.  LICENSES—*Real Property—Revocation of License—Authority of
    Lessee.*
    The rule giving right to the owner of a fee to revoke at pleas-
    ure a mere license to another to occupy his land or any portion
    thereof, is equally applicable to his lessee, where such lessee
    is the licensor, unless the latter be restrained by the terms of
    his lease from granting such license.   (p. 156).

5.  SAME—*Real Property—Revocation of License—Acts Constitut-
    ing.*
    As a general rule a mere license is terminated by any act of
    the licensor which evinces an intention to revoke it, such as a
    conveyance or contract inconsistent with the continued enjoy-
    ment of the license.   (p. 156).

Appeal from Circuit Court, Wood County.

Bill in equity by Gus Salinger against the North American
Woolen Mills Company, and others.   From a decree for de-
fendant, plaintiff appeals.

*Affirmed.*

*John F. Laird, D. C. Casto* and *Dorr Casto,* for appellant.

*Thomas Coleman* and *Merrick & Smith,* for appellees.

MILLER, JUDGE:

Plaintiff, on bill filed, obtained an injunction restraining
defendants and all other persons, from "destroying, removing,
painting over, interfering with, or in any wise molesting, de-
facing, or changing the painted advertisement and signs" placed
by him on the front outer walls of the upper stories of the store
building occupied by him on Court Square in the City of
Parkersburg.

On bill, answers of defendants, and affidavits filed on behalf
of plaintiff the court, in vacation, on motion of defendants
dissolved the injunction, and plaintiff has appealed.

Plaintiff is lessee under Strong, the owner of the building,
of the store room occupied by him, while defendants, Kinney &
Carroll, are lessees of the two upper stories of the same build-
ing.   Plaintiff first entered in October, 1907, as assignee of
Rauch, a prior lessee.   Subsequently, on April 1, 1908, the date
of the expiration of the Rauch lease, pursuant to agreement,
Salinger obtained from Strong, a new lease for five years,

on the terms of the old, with privilege of an additional term of five years. Following this new lease, Strong, by agreement with plaintiff, built an addition in the rear, and on October 1, 1908, the prior lease of April 1, was surrendered, and a second lease, covering the new addition, on the terms of the first, except that the rent was increased from sixty to one hundred dollars per month, was executed.

The grounds of relief alleged are, not that plaintiff's lease, in terms, gave him any right to occupy the front walls of the upper stories of the building with his signs, but that prior to purchasing the lease from Rauch, and as an inducement thereto, Strong agreed that he might paint signs on said walls; and that Kinney & Carroll, tenants of the upper stories, and who had been such tenants for many years prior to plaintiff's purchase of the Rauch lease, had also consented thereto; and that before occupying said store room, with his stock of goods, he had actually painted said signs on said upper walls, as they were at the time of filing his bill, and that he was so occupying said walls with his signs to the knowledge and acquiescence of Strong, and the knowledge and acquiescence of Kinney & Carroll, when Strong executed to him, the two leases of April 1, and October 1, 1908, and when in August, 1910, the North American Woolen Mills Co., or Boso its manager, claiming the right by contract with said Kinney & Carroll, and with Strong the landlord, undertook to enter and paint out said signs, and occupy said walls with signs advertising the business of said Woolen Mills Company, and for which he sought to enjoin them.

The answer of Strong denies the alleged agreement, and denies that the subject of so occupying said upper walls with signs was ever mentioned by plaintiff prior or subsequent to plaintiff's purchase of the Rauch lease. His only admission is that some time after he executed the lease of April 1, 1908, plaintiff said to him that he was going to paint the upper walls, but that no mention was then or at any time made about painting signs thereon. He admits knowledge that plaintiff had painted signs on these walls, but he disclaims the right, as against Kinney & Carroll, his upper tenants, to authorize plaintiff to so occupy said walls, and he denies that he ever undertook to do so. He says he had no objection, if Kinney & Carroll

had none, to plaintiff's use of said walls; and the latter, while denying any agreement with plaintiff that he might so occupy said walls, say they were not disposed to annoy or interfere with plaintiff in such use, so long as they had no opportunity to otherwise occupy said walls; but that having had opportunity in August, 1910, to lease said walls at a profit they had executed the contract to Boso for his Woolen Mills Company, and they denied any right in plaintiff by contract, license or otherwise to longer occupy said walls with his signs.

While admitting said signs may be of value to plaintiff, all the answers deny any alleged intention to injure him or his business, in making the contract with Boso, or that depriving him of the use of said walls for his signs will have that effect.

No evidence was offered in support of the bill, except the ex-parte affidavit of plaintiff himself, to the effect that on August 20, 1910, M. Carroll, of the firm of Kinney & Carroll, had said to him that his firm had been compelled to sign the contract with Boso, for fear that if they did not do so Strong, the landlord, would require them to vacate the building, and that he, Carroll, personally did not then or at any time lay claim to any right to use said front walls for display signs or the right to lease the same to anybody else, and that he would not have signed the contract with Boso, except for the threat of Strong and Boso to cancel their lease, a lease from month to month.

On this state of the pleadings and proofs, was the injunction properly dissolved? That a moral wrong may possibly be inflicted on plaintiff may be admitted. But the rights of plaintiff to longer occupy said walls with his signs, depend solely on the nature of that right.

It is conceded that his lease does not in terms give him such right, and we must say from the record, that he had no contract resting in parol, either with Strong, the landlord, or with Kinney & Carroll, the upper tenants, to so occupy said upper walls with his signs, for the allegations of his bill, as to any such contract or agreement are denied by the answers, and there is no proof thereof. The rights of the plaintiff, therefore, rests solely upon the fact that Strong, and Kinney & Carroll knew of plaintiff's use of said walls, and for so long a time did not object thereto. We do not see how this knowledge of Strong, at the

time he executed the leases to plaintiff can in any way affect the rights of the American Woolen Mills Company or Boso, under their contract with Kinney & Carroll, the upper tenants. The written lease from Strong to Salinger became the repository of plaintiff's contract, and all preceding negotiations were consummated in it, and it furnishes the controlling evidence, in the absence of fraud or mistake, of the terms and conditions upon which the property was demised. Jones on Landlord and Tenant, section 132. This is an elementary principle of contracts.

It is contended by counsel for defendants that the acquiescense of Strong, and of Kinney & Carroll, in the use of said walls by plaintiff, amounted to a mere license, revocable at pleasure, and not to an easement. This proposition seems well founded in law. 2 Minor Inst. 22; *Mumford* v. *Whitney,* 30 Am. Dec. 68; *Lowell* v. *Strahan,* 145 Mass. 1, 1 Am. St. Rep. 422. The proposition is particularly applicable where the license appertains to the occupancy of outside walls for advertising signs. Jones on Landlord and Tenant, section 40.

The question then is, who had the right to give such license? If Kinney & Carroll, the upper tenants, had the right to control the use of the outer walls of that portion of the building occupied by them, they alone had the right to give the privilege or license to plaintiff, and no act of Strong could bind them, unless they had knowledge thereof and approved or acquiesced therein. Their answer is a denial of any knowledge of Strong's action or contract with plaintiff, and asserts their right to the use of said outer walls, and their legal right to contract the use thereof to the Woolen Mills Company. It is well settled also that a lessee has the exclusive right to the use of the outside walls of the portion of the building covered by his lease, to the exclusion of a lessee of another part of the same building, and has no right to use for any purpose, any portion of the outside walls not enclosing his part of the premises. 1 Underhill on Landlord and Tenant, section 277. And this rule applies to the use of such walls for signs. Jones on Landlord and Tenant, section 108; 24 Cyc. 1047; *Riddle* v. *Littlefield,* 16 Am. Rep. 388. Our conclusion, therefore, is that Kinney & Carroll, and not Strong, had the right to control the outer walls of the upper stories of the building occupied by plaintiff. They were tenants

thereof when plaintiff obtained his lease; he was charged with notice of their rights. He does not claim to have had any contract with them, and having undertaken to occupy ·these walls, without agreement with them, he did so at his peril.

Was the license of Kinney & Carroll revocable by them? Mr. Minor, 2 Minor's Inst. 22, says: "A license is sometimes revocable, namely, where if it is countermanded, it leaves the party in *statu quo.*" And Mr. Jones says: "A mere license, unaccompanied with any vested interest in the real estate, created by deed or other writing, and independent of any title acquired by grant, prescription or adverse possession and claim for a period of the statute of limitations, must be deemed to be, in its own nature, countermandable, and essentially revocable at the will of the owner of the fee." Jones on Landlord and Tenant, section 37. But when the owner of the fee is not the licensor, we think the rule is equally applicable to a tenant, unless restrained by the. terms of his lease from granting such license. This latter proposition we think fully supported by *Riddle* v. *Littlefield,* and *Lowell* v. *Strahan, supra.* The license of Kinney & Carroll, having been without consideration, they could revoke it at any time. *Harris* v. *Brown,* (Pa.) 90 Am. St. Rep. 612; *Lawrence* v. *Springer,* (N. J.) 31 Am. St. Rep. 713; *Pifer* v. *Brown,* 43 W. Va. 412, 49 L. R. A. 497.

The remaining question is, did Kinney & Carroll revoke the license? The general rule is that a license is terminated by any act of the licensor which shows an intention to revoke it, such as a conveyance, or contract inconsistent with the continued enjoyment of the license. 18 Am. & Eng. Ency. Law, 1141; note to *Pifer* v. *Brown, supra,* 49 L. R. A. 497, and cases cited. The agreement in writing of Kinney & Carroll with the defendant Boso, giving to him the privilege of using said walls is sufficient evidence, according to these authorities, of their intention to revoke the license to plaintiff.

We are of opinion, therefore, that the injunction was properly dissolved. The material allegations of the bill having been· fully, fairly, plainly, distinctly and positively denied in the sworn answers, and not proven, it was the duty of the court, on motion of the defendants, to dissolve the injunction. *Cox* v. *Douglass,* 20 W. Va. 175; *Schoonover* v. *Bright,* 24 W. Va. 698;

*Kester* v. *Alexander,* 47 W. Va. 329; *Crossland* v. *Crossland,* 53 W. Va. 114. The decree below must, therefore, be affirmed.

*Affirmed.*